Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| CASE NUMBER | 94 C 1890 | DATE | 8/1/2000 |
| CASE TITLE | William B. Blanchard vs. Edgemark Financial Corp., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motion for clarification [346-1] is denied-in-part and granted-in-part, and defendants' motion for reconsideration [346-2] is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 4 number of notices | Document Number |
| | No notices required. | AUG 0 2 2000 date docketed | 359 |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | *not* docketing deputy initials | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | 8/1/2000 date mailed notice | |
| ✓ | Copy to judge/~~magistrate judge~~. | | |
| IS | courtroom deputy's initials | IS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM B. BLANCHARD, on behalf of himself and all others who sold, relinquished rights in or were deprived of ownership of shares of EdgeMark Financial Corporation common stock on or after April 1, 1993 and on or before November 1, 1993,

    Plaintiff,

v.

EDGEMARK FINANCIAL CORPORATION, ROGER A. ANDERSON, CHARLES A. BRUNING, DOE GROUP I, DOE GROUP II, and OLD KENT BANK, an Illinois banking corporation,

    Defendants.

DOCKETED
AUG 0 2 2000

Case No. 94 C 1890

Judge Wayne R. Andersen

Magistrate Judge
  Martin C. Ashman

## MEMORANDUM OPINION AND ORDER

Before this Court are Defendants' motion for clarification of our May 22, 2000 order concerning Plaintiff's motion to amend and Defendants' motion for reconsideration of ruling on relation back of amendment. The general background of this case has been set forth extensively in numerous prior opinions and will not be repeated here. For the reasons that follow, the motion for clarification is partially granted but the motion for reconsideration is denied.

Plaintiff sought leave to file a fourth amended complaint adding or changing allegations to support a finding of a duty to disclose based upon a fraudulent omission and a special relationship, voluntarily dismissing the allegations pertaining

359

to a duty to disclose based upon insider trading, and adding or changing allegations pertaining to his state-law claims. On May 22, 2000, this Court concluded that the only potential basis for a duty to disclose arose out of an alleged special relationship by virtue of the defendant directors' dual role as directors of Edgemark and trustees of the Edgemark Voting Trust between November 1 and December 31, 1992. But this Court found the amendments insufficient to support a duty to disclose based upon a fraudulent omission. Finally, this Court allowed all of the amendments to the state-law counts because Defendants made no objections to their allowance.

Thus, because the allegations pertaining to fraudulent omission and insider trading are gone, the only potential route to liability under the *federal* securities-fraud claim is by virtue of a special relationship between certain of the class members and certain of the defendants. Defendants ask for clarification as to which class members and which defendants remain in this case in light of this Court's order of May 22, 2000. Once this Court clarifies that order, Defendants request that this Court reconsider its ruling that the amendments relate back to the original allegations.

Initially, the class comprised of those who sold or relinquished Edgemark stock between April 1 and November 1, 1993. Plaintiff then sought to expand the class to those who sold or relinquished Edgemark stock between November 1, 1992, and November 1, 1993. This Court ruled that the only potential basis

for a duty to disclose arose by virtue of an alleged special relationship between the class members who held Voting Trust certificates ("certificate holders") and the defendant directors who were also trustees of the Voting Trust from November 1, 1992, to December 31, 1992. (Mem. Op., at 9.) This Court did not make explicit whether this ruling impacted the class period. Defendants seek a clarification, arguing that one possible interpretation of that ruling is that the class period is now restricted to those who sold or relinquished shares between November 1 and December 31, 1992.

What should have been apparent from this Court's prior opinion, and which will be made explicit now, is that the ruling as to when a special relationship may have arisen, i.e., between November 1, 1992 and December 31, 1992, was not intended to restrict concomitantly the class to those who sold or relinquished stock during that same time period. Defendants did not advance any such argument in opposing Plaintiff's motion to amend, and cite no authority in support of such an argument in making the present motion. It is also noteworthy that this Court did not disallow Plaintiff's proposed amendment advancing the start of the class period from April 1, 1993 to November 1, 1992. Therefore, the amendment advancing the start of the class period from April 1, 1993 to November 1, 1992 is allowed, and leave is granted to so amend the complaint. The end of the class period, November 1, 1993, remains unchanged.

Next, Defendants argue that by disallowing the fraudulent-omission and insider-trading allegations, and by allowing the special-relationship allegations to stand as to the defendant directors who were also trustees, this Court implicitly rejected the possibility of any claim against the entity defendants and the non-trustee director defendants. First, as to the state-law claims, all defendants are still properly in this case because Defendants never objected to any of those claims when they resisted Plaintiff's motion to amend. They do object now, but this Court will not entertain a belated attack to the state-law claims on a motion for clarification. As for the federal claim, however, Defendants correctly point out that the complaint does not allege a basis for a special relationship between the certificate holders and *Edgemark* itself. This Court explicitly defined the special relationship as existing between the certificate holders and the directors-trustees *only*. (Mem. Op., at 9.) Plaintiff does not allege any fiduciary relationship between the certificate holders and the entities themselves, nor does he allege that the trustee-directors acted on behalf of *Edgemark* such that their actions might bind Edgemark. Thus, the federal claim as amended stands as against the defendant directors who were also trustees of the Voting Trust from November 1 to December 31, 1992, *but not as against any other defendant*.

We reiterate that all of the amendments as to the state-law claims are allowed, and leave is granted to amend them. The first attack made by the Defendants to any of the state-claim amendments was in their reply brief on their motion for clarification. By doing so, they unfairly foreclosed Plaintiff the opportunity to respond. This Court will not entertain such one-sided attacks on a complaint.

Defendants' other motion seeks reconsideration of this Court's ruling on the relation back of the amendments. The standard for a motion for reconsideration is a high one:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Publisher's Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561, *modified on other grounds*, 835 F.2d 710 (7th Cir. 1985) (quotation omitted). Defendants have not demonstrated that this Court committed a "manifest error of law" in ruling that the amended claims relate back to the original allegations.

In the May 22 order, this Court concluded that the amendments related back to the original complaint in accordance with Rule 15(c)(3) of the Federal Rules of Civil Procedure. (Mem. Op., at 19.) Defendants argue that the proposed complaint "completely changes the class period, completely changes the class members, completely changes the theories underlying the

claim, and completely changes the description of events that Plaintiff contends should have been disclosed." (Defs.' Mem., at 13.) This Court does not share Defendants' view of the nature of the amendments.

We reiterate that "amendments pursuant to Rule 15(c) should be freely allowed." *Woods v. Indiana Univ.-Purdue Univ.*, 996 F.2d 880, 884 (7th Cir. 1993). In the May 22 order, this Court stated that "no new claims are added," a statement with which Defendants now vehemently disagree. But what new *claim* was added? This case has always been about alleged violations of the federal securities laws arising out of some duty to disclose, whether based upon a fraudulent omission, a special relationship, or insider trading. The alleged duty to disclose has been whittled down to one based upon a special relationship, but the claim is still one for alleged violations of Section 10(b) and Rule 10b-5 based on a duty to disclose.

A different scenario confronted the court in *Fairchild v. Forma Scientific, Inc.*, cited by Defendants for the proposition that "*under the circumstances presented to us in this case*, an untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge." 147 F.3d 567, 575 (7th Cir. 1998) (emphasis added). "This case" involved a plaintiff who filed a charge of age discrimination with the EEOC but belatedly amended his discrimination charge to include disability discrimination after the EEOC's filing

deadline had passed, an oversight which would have normally barred his ability to pursue such a claim in federal court. In an effort to keep a disability discrimination claim in his case, the plaintiff argued that his amended disability discrimination charge related back to his timely filed age discrimination charge with the EEOC. The court rejected this attempt, noting that the plaintiff was alleging "an entirely new theory of recovery," and had not provided any factual nexus to the original age discrimination charge. *Id.* at 575. Under those circumstances, the court refused to allow the disability charge to relate back to the original charge. *See id.* at 576.

*Fairchild* is distinguishable in several respects. First, the plaintiff there sought relation back in accordance with an EEOC regulation which uses an entirely different relation-back standard from that employed by Rule 15(c). In addition, this is not the first time Plaintiff has attempted to allege a duty to disclose based upon a special relationship. Plaintiff has always attempted to allege a duty to disclose based upon a special relationship, but those efforts, until recently, were all rejected. Notably, Defendants cannot and do not claim any prejudice from the recent amendments pertaining to a special relationship; they simply attack the amendments on the grounds that they completely change the character of this case.

Furthermore, unlike in *Fairchild*, there is a factual nexus that connects the new and old allegations. The parties have

known since the filing of the complaint that Plaintiff has sought to determine the precise moment when Edgemark contacted a broker in a relevant manner. According to the old allegations, the earliest contact occurred in April of 1993 when a DLJ broker made a presentation to Edgemark directors. According to the new allegations, the contact occurred earlier in November of 1992 during an alleged dinner meeting with an Edgemark director and a DLJ broker. But both the old and new allegations involve the same cast of characters -- the Edgemark directors and Mr. Bruning of DLJ -- and they both relate to Plaintiff's quest to uncover the triggering event for a duty to disclose based upon a special relationship.

Defendants also claim that the evidence is not "new," disputing Plaintiff's claim that Plaintiff discovered evidence of the alleged dinner meeting only two months before he sought to amend his complaint. Defendants believe that Plaintiff would have discovered these documents four months earlier because they were contained in the personal files of Mr. Bruning, the Edgemark director who allegedly met with the DLJ broker, which had been produced at least six months before Plaintiff seeking to amend the complaint. But in the period after which the document revealing the alleged dinner meeting was produced, Plaintiff has diligently culled through tens of thousands of documents, taken or defended over 25 depositions, pursued numerous motions to compel, some of which were successful, and completed expert discovery. Both parties have worked diligently in this case, and

- 8 -

there is no indication that either party has engaged in dilatory or contumacious discovery tactics.

Next, Defendants attack this Court's determination that there was a sufficient identity of interest between the former class plaintiffs and the new plaintiffs such that Defendants had notice of the proposed amendments and were not prejudiced by their allowance. They rely primarily on *Norton v. International Harvester Co.*, 627 F.2d 18 (7th Cir. 1980), in which the court noted that the identity of interest principle is often applied where there is an intercorporate relationship between the new and added parties. *See id.* at 21 (quoting *Hernandez Jiminez v. Calero Toledo*, 604 F.2d 99, 102-03 (1st Cir. 1979)). The court held that there was no identity of interest between the named defendant and the new defendant because there was no intercorporate relationship between the two. *See id.* at 22. Thus, *Norton* speaks to newly added *corporate* parties, whereas here, the proposed amendments seek to add new *individual* class members. Obviously there is no intercorporate relationship between the original and new class members as they are not corporate entities, so *Norton* is of limited value here. But both the original and new members do share much in common: both were victims of the alleged fraud, both allegedly sold or relinquished Edgemark stock after becoming disenchanted with the prospects of a sale, and presumably most of the original class members were

also certificate holders. This Court again concludes that these shared factors demonstrate an identity of interest between the original and newly added class members.

Finally, Defendants attack this Court's liberal construction of Rule 15(c)'s "mistake" requirement without citing any authority which exposes this construction as a manifest error of law. In the May 22 order, this Court concluded that under the permitted liberal construction of Rule 15(c), Plaintiff's discovery of evidence of the dinner meeting which supported pushing back the start of the class period may reasonably be viewed as a mistake. (Mem. Op., at 17 (citing *Rae v. Klusak*, 801 F. Supp. 983, 985 (N.D. Ill. 1993) (Shadur, J.) (subsequent discovery of facts that supported filing of new claim viewed as a "mistake" under Rule 15(c))).) Moreover, we did not pull this construction out of thin air -- we are not the first to view such recent discovery as a "mistake" under Rule 15(c). *See Rae*, 801 F. Supp. at 985. Defendants also argue that this Court's conclusion that newly discovered evidence can be viewed as a mistake completely obliterates the three-year statute of limitation for filing a Rule 10b-5 claim. This ignores that Rule 15(c) requires more than a showing of mistake, and that any statute of limitation may be overcome by a successful showing of all of Rule 15(c)'s requirements. Defendants have not demonstrated that this Court made a manifest error of law in finding Rule 15(c)'s mistake requirement met here.

In summary, Plaintiff is given leave to file an amended complaint that conforms with this order (and with the May 22 order to the extent not inconsistent with this order) including, but not limited to, the following:

> the amendment changing the start of the class period from April 1, 1993 to November 1, 1992 is allowed;
>
> the end of the class period shall remain November 1, 1993;
>
> the *only* defendants against which the federal claim may be directed are the director defendants who were also trustees of the Voting Trust between November 1, 1992 to December 31, 1992;
>
> the only allegations allowed under the federal securities-fraud claim are those pertaining to an alleged special relationship between the class member plaintiffs who held Voting Trust Certificates and the defendant directors who were trustees of the Voting Trust from November 1 to December 31, 1992;
>
> the other allegations pertaining to a duty to disclose based upon a fraudulent omission and insider trading are disallowed as to the federal securities-fraud claim only; and
>
> none of the foregoing restrictions to the federal-claim allegations applies to the state-law claims, and therefore all allegations and amendments pertaining to the state-law claims are allowed.

Such an amended complaint must be filed within 14 days from entry of this order. If Plaintiff chooses not to file an amended complaint, the Third, not the Fourth, Amended Complaint shall stand as the complaint in this case.

For the foregoing reasons, Defendants' motion for clarification [346-1] is denied-in-part and granted-in-part, and Defendants' motion for reconsideration [346-2] is denied.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** August 1, 2000.

Copies have been mailed to:

| | |
|---|---|
| REUBEN L. HEDLUND, Esq.<br>STEPHEN C. HACKNEY, Esq.<br>Hedlund, Hanley & John<br>5700 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL 60606 | PAUL E. FREEHLING, Esq.<br>VICTORIA P. HALLOCK, Esq.<br>D'Ancona & Pflaum<br>111 East Wacker Drive<br>Suite 2800<br>Chicago, IL 60601 |
| | WILLIAM K. HOLMES, Esq.<br>MOLLY E. McFARLANE, Esq.<br>Warner, Norgross & Judd, LLP<br>900 Old Kent Building<br>111 Lyon Street, N.W.<br>Grand Rapids, MI 49503-2489 |
| Attorneys for Plaintiff | Attorneys for Defendants |